United States District Court
Southern District of Texas

**ENTERED**

April 08, 2026

Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| MAYKETIA LLANES CARNESOLTA, | § § | CIVIL ACTION NUMBER 4:26-cv-01006 |
| Petitioner, | § | |
| | § | |
| | § | |
| versus | § | JUDGE CHARLES ESKRIDGE |
| | § | |
| | § | |
| RANDY TATE, *et al*, | § | |
| Respondents. | § | |

**OPINION AND ORDER ON DISMISSAL**

Petitioner Mayketia Llanes Carnesolta filed a petition for writ of *habeas corpus* under 28 USC §2241 on February 6, 2026. Dkt 1. She acknowledges illegal entry into the United States at a prior date but nonetheless asserts that her present detention under 8 USC §1225(b) is unlawful. She contends that any detention should instead proceed, if at all, under 8 USC §1226(a), which may entitle her to a bond hearing. Id at ¶2.

Prior order indicated that the arguments in the petition appeared to raise only issues previously resolved in decisions cited there. Dkt 4. Petitioner was given an opportunity to make a further filing with additional authorities or distinguishing facts not considered in the rulings cited on prior dismissals.

Petitioner then filed an amended petition. Dkt 6. In it, she asserts claims under (i) the Immigration and Nationality Act, (ii) the Due Process Clause of the Fifth Amendment, (iii) equal protection, (iv) the Suspension Clause, and (v) the *Accardi* doctrine. Id at ¶¶74–148. The claims with respect to equal protection and the *Accardi* doctrine weren't resolved by the prior-cited decisions. The

Government was thus ordered to show cause as to those claims only. Dkt 7. It then filed a response. Dkt 10.

The Fifth Circuit has now issued a controlling decision in *Buenrostro-Mendez v Bondi*, 166 F4th 494 (5th Cir 2026). In sum, it holds that anyone present in the United States without legal admission is both an "applicant for admission" and deemed to be "seeking admission," and that all such persons are thus subject to mandatory detention under 8 USC §1225(b)(2)(A). Such determination forecloses Petitioner's statutory arguments under the INA. See also *Herrera Avila v Bondi*, 2026 WL 819258 (8th Cir) (holding to same effect).

The undersigned previously resolved that and an array of closely related issues upon determination that the Government may properly apply 8 USC §1225(b)(2)(A) in circumstances similar to those of Petitioner. For example, see:

- o *Montoya Cabanas v Bondi*, 2025 WL 3171331 (SD Tex): Finding that (i) the term "applicant for admission" is determinative, as it is broadly defined to include anyone "present in the United States who has not been admitted," (ii) application of §1225(b)(2)(A) doesn't render superfluous the amendment to §1226 by the Laken Riley Act, and (iii) no due process violation occurs where constitutional argument depends on rejected statutory interpretation of §§1225 and 1226.

- o *Herrera Naranjo v Uhls*, 2025 WL 3771447 (SD Tex): Rejecting contention that (i) the text of §1225(b)(2)(A) is ambiguous, with resort to other canons of statutory construction thus being unnecessary, (ii) the location of petitioner's arrest may itself violate due process or otherwise make detention unlawful, and (iii) prior work authorizations confer lawful status.

- o *Rodriguez-Hidalgo v Noem*, 4:25-cv-05730 (SD Tex, Jan 9, 2026): Rejecting arguments based on (i) bond regulations, because statutory language prevails over putative conflicting regulations, (ii) due process, because the Government may constitutionally detain deportable aliens during the limited period necessary for their removal proceedings, and (iii) eligibility for adjustment of status under the Cuban Adjustment Act, because such is outside the scope of *habeas* jurisdiction.
- o *Garcia Tabon v Dickey*, 4:25-cv-06145 (SD Tex, Jan 22, 2026): Rejecting argument under Administrative Procedure Act where it depends on rejected statutory interpretation of §§1225 and 1226.
- o *Ordonez v Frink*, 2026 WL 143153 (SD Tex): Rejecting argument under Fourth Amendment where it depends on rejected statutory interpretation of §§1225 and 1226.

As noted within those citations, a claim under the Due Process Clause of the Fifth Amendment necessarily fails to the extent that it proceeds upon reliance of rejected statutory interpretation as to the applicability of §1226. For example, see *Montoya Cabanas*, 2025 WL 3171331 at *6–7; *Herrera Naranjo*, 2025 WL 3771447 at *2. Further, the Supreme Court has recognized that "the Government may constitutionally detain deportable aliens during the limited period necessary for their removal proceedings." *Maceda Jimenez v Thompson*, 2025 WL 3265493, *1 (SD Tex), quoting *Demore v Kim*, 538 US 510, 523 (2003).

As also noted above, a claim under the Administrative Procedure Act likewise fails to the extent that it proceeds upon reliance of the same rejected statutory interpretation. Such claims are also foreclosed by 5 USC §704, given that adequate remedy exists through *habeas* relief. For example, see *Garcia Tabon*, 4:25-cv-06145, Dkt 14 at 3; *Sanchez-Sanchez v Bondi*, 4:26-cv-00144, Dkt 7 at 2–3.

The undersigned has also determined a number of other issues since the Fifth Circuit decided *Buenrostro-Mendez*. Most pertinent is *Penafiel Clavijo v Thompson*, 2026 WL 923310 (SD Tex), holding that (i) procedural due process doesn't require an individualized custody determination beyond the mandate of 8 USC §1225(b)(2)(A), and (ii) pre-removal-order detention without a bond hearing pending removal proceedings didn't violate substantive due process, where not exceeding the presumptively reasonable six-month period enunciated in *Zadvydas v Davis*, 533 US 678, 701 (2001), as to post-removal-order detention.

To the extent that Petitioner otherwise relies on arguments not already raised and resolved to the contrary in the decisions above, they lack merit.

*As to equal protection,* Petitioner suggests that mandatory detention by classification under §1225(b)(2)(A) "fails rational-basis review as applied to Petitioner" because "a categorical rule that treats similarly situated individuals differently based solely on entry-related labels [ ] bear[s] no rational relationship to present-day custody concerns." Dkt 6 at ¶¶121–22.

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v Cleburne Living Center*, 473 US 432, 439 (1985), quoting *Plyler v Doe*, 457 US 202, 216 (1982). The Supreme Court holds that this guarantee of equal protection applies to the federal government through the Due Process Clause of the Fifth Amendment. *Bolling v Sharpe*, 347 US 497, 499–500 (1954).

To establish an equal protection claim requires proof at the outset that *similarly situated* persons have been treated differently. *Faculty Rights Coalition v Shahrokhi*, 204 F Appx 416, 420 (5th Cir 2006), citing *Muhammad v Lynaugh*, 966 F2d 901, 903 (5th Cir 1992). The Fifth Circuit holds that the inquiry is "whether they 'are in all

relevant respects alike.'" *Texas Entertainment Association v Hegar*, 10 F4th 495, 513 (5th Cir 2021).

The subject classifications here are (i) those aliens, like Petitioner, who are subject to mandatory detention under §1225(b)(2)(A), and (ii) those aliens in removal proceedings who are entitled to a bond hearing when detained under §1226(a). For example, see Dkt 6 at ¶¶113–26. Notably, the immigration charges giving rise to detention pending removal within each of those groups are quite distinct. An alien detained under §1225(b)(2)(A) entered entirely without inspection in disregard of law, which is a *criminal* offense. An alien detained under §1226(a) instead was lawfully admitted but then took other action (such as overstaying a visa), which is a *civil* offense. Compare 8 USC §§1325, 1326 (illegal entry and re-entry), with 8 USC §1227(a)(1)(C)(i) (visa overstay).

The Fifth Circuit holds differences such as these to defeat the "similarly situated" requirement. For example, see *Faculty Rights Coalition*, 204 F Appx at 420 (adjunct professors not similarly situated to full-time faculty for purposes of salary and benefits); *Golden Glow Tanning Salon, Inc v City of Columbus*, 52 F4th 974, 978–79 (5th Cir 2022) (Wal-Marts and tanning salons not similarly situated for purposes of COVID-era restrictions).

It having been determined that aliens in each of these two groups are *not* similarly situated in all relevant respects, the equal-protection inquiry needn't proceed further. But even if those detained under §1225(b)(2)(A) were similarly situated to those detained under §1226(a), such classification doesn't offend equal protection.

Petitioner acknowledges, as she must, that deferential rational-basis review applies to disparate treatment of different groups of aliens. See Dkt 6 at ¶121. Legislation survives rational-basis review so long as there is "any reasonably conceivable state of facts that could provide a rational basis for the classification." *Cabral v Holder*, 632 F3d 886, 894 (5th Cir 2011). This means that, where there are "plausible reasons" for congressional action, judicial inquiry "is at an end." *FCC v Beach*

*Communications, Inc*, 508 US 307, 313–14 (1993), quoting *United States Railroad Retirement Board v Fritz*, 449 US 166, 179 (1980). And as pertinent here, the Supreme Court stresses "the limited scope of judicial inquiry into immigration legislation." *Fiallo v Bell*, 430 US 787, 792 (1977); see also *Mathews v Diaz*, 426 US 67, 78–84 (1976) (holding that "statutory discrimination" between classes of aliens "allowing benefits to some aliens but not to others" is permissible).

For reasons explained above as to why the subject classes aren't similarly situated in the first place, Congress could quite rationally treat the worse infraction (encompassing aliens who entered without inspection in contravention of law) more harshly than the lesser infraction (encompassing aliens who were once lawfully admitted but later became removable). Such explanation suffices under the pertinent, deferential standard. See Dkt 10 at 5 n 3.

The claim for equal protection will be dismissed.

*As to the* Accardi *doctrine*, Petitioner's claims amount to a challenge to the legality of her arrest without a warrant under 8 CFR §§287.8(c)(2)(i) and (ii). See Dkt 6 at ¶¶138–48.

The claim fails at the threshold because 8 CFR §287.12 specifically disclaims creation of any enforceable rights with respect to 8 CFR Part 287 – Field Officers; Powers and Duties. See also *Rios-Arias v Sessions*, 684 F Appx 441, 442 (5th Cir 2017) (holding that 8 CFR §287.12 "do[es] not create any enforceable rights or remedies"). Petitioner thus has no enforceable right to assert in this regard.

Beyond this, it's unclear from the record whether Petitioner's arrest at an ICE facility failed to comport with the cited regulations. See Dkt 10 at 9. But even assuming her characterization is factually correct, remedy pursuant to *habeas corpus* isn't available. The Supreme Court holds that "the mere fact of an illegal arrest has no bearing on a subsequent deportation proceeding." *INS v Lopez-Mendoza*, 468 US 1032, 1040 (1984). This is so because the

6

"body or identity of a defendant or respondent in a criminal or civil proceeding is never itself suppressible as a fruit of an unlawful arrest." Id at 1039 (cleaned up).

Said differently, an illegal *arrest* has no bearing on the legality of detention *following* that arrest. A number of district courts have thus rejected *habeas corpus* claims based on allegedly unlawful arrests. For example, see *Rezaee v President of the United States*, 2025 WL 4051609, *5 (MD Fla); *HN v Warden, Stewart Detention Center*, 2021 WL 4203232, *5 (MD Ga). Even courts sustaining other arguments in similar petitions have rejected unlawful-arrest claims. For example, see *Rodrigues De Oliveira v Joyce*, 2025 WL 1826118, *5 (D Me) (rejecting illegal-arrest argument but granting relief on grounds of procedural due process); *Valenzuela v Semaia*, 2025 WL 3635578, *4–5 (CD Cal) (rejecting illegal-arrest argument but finding petitioner likely to succeed on merits of INA claim). Petitioner may be able to pursue "alternative remedies for institutional practices . . . that might violate Fourth Amendment rights." *Lopez-Mendoza*, 468 US at 1045. But relief on *habeas corpus* is "at its core a remedy for unlawful executive detention." *DHS v Thuraissigiam*, 591 US 103, 119 (2020).

The claim as to the *Accardi* doctrine will be dismissed.

*As to the Suspension Clause*, the claim will also be dismissed. Dkt 6 at ¶¶127–37. The privilege of the writ of *habeas corpus* hasn't been suspended. To the contrary, petitions here and across the country are being addressed and resolved on the merits.

The amended petition for writ of *habeas corpus* by Petitioner Mayketia Llanes Carnesolta is thus DENIED. Dkt 6.

This action is DISMISSED WITH PREJUDICE.

A final judgment will enter separately.

SO ORDERED.

Signed on April 8, 2026, at Houston, Texas.

_____
Honorable Charles Eskridge
United States District Judge